**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**JENNIFER KUMPF,**

                                        **Plaintiff,**                    1:22-cv-00402 (BKS/CFH)

v.

**NEW YORK STATE UNITED TEACHERS;**
**BUFFALO TEACHERS FEDERATION; BUFFALO**
**CITY SCHOOL DISTRICT,**

                                        **Defendants.**

_____

**Appearances:**

*For Plaintiff:*
David R. Dorey
Nathan J. McGrath
Tessa E. Shurr
The Fairness Center
500 North Third Street, Suite 600B
Harrisburg, Pennsylvania 17101

*For Defendants New York State United Teachers*
*and Buffalo Teachers Federation:*
Robert T. Reilly
Andrea A. Wanner
Timothy Connick
800 Troy-Schenectady Road
Latham, New York 12110

Scott A. Kronland
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108

*For Defendant Buffalo City School District:*
Nathaniel J. Kuzma, General Counsel
Christopher R. Poole, Assistant Legal Counsel
713 City Hall – 65 Niagara Square
Buffalo, New York 14202

Hon. Brenda K. Sannes, Chief United States District Judge:

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiff Jennifer Kumpf brings this action under 42 U.S.C. § 1983 against Defendants New York State United Teachers, Buffalo Teachers Federation, and the Buffalo City School District (the "District"). (Dkt. No. 1). Plaintiff asserts that Defendants' deduction of union dues from Plaintiff's paycheck after she revoked her membership in October 2021 until July 2022 violated the First and Fourteenth Amendments under *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018). (Dkt. No. 1). Presently before the Court are Defendants' motions to dismiss the Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). (Dkt Nos. 19, 20). The parties have filed responsive papers. (Dkt. Nos. 25, 26, 27, 29, 31). For the reasons that follow, Defendants' motions are granted.

## II.     FACTS[1]

### A.      The Taylor Law

The Taylor Law, New York Civil Service Law § 202, provides public employees in New York the right to "join and participate in, or to refrain from . . . joining, or participating in, any employee organization of their own choosing." The Taylor Law also gives public-sector unions representing public employees the right "to membership dues deductions" and empowers public employers to deduct membership dues on behalf of a union from the "salary of [] public employee[s]" "upon presentation of dues deduction authorization cards signed by individual

---

[1] The facts are drawn from the Complaint, its attached exhibits, and the exhibits discussed *infra* Section III. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

employees." N.Y. Civ. Serv. Law § 208.1(b). The Taylor Law provides that "[t]he right to such membership dues deduction shall remain in full force and effect until . . . an individual employee revokes membership in the [public-sector union] in writing in accordance with the terms of the signed authorization." *Id.* § 208.1(b)(i).

### B.     The Parties

Plaintiff is employed as a second-grade classroom teacher by the District's Buffalo Public Schools System. (Dkt. No. 1, ¶ 11). Plaintiff is a "public employee," and the District is a "public employer," within the meaning of the Taylor Law. (*Id.* ¶¶ 11, 14 (citing N.Y. Civ. Serv. Law §§ 201.6, 201.7)). As an employee in the "instructional division," Plaintiff is "part of the bargaining unit that is represented exclusively for purposes of collective bargaining" by Buffalo Teachers Federation ("BTF"). (*Id.* ¶ 11). BTF is "a local affiliate of" New York State United Teachers ("NYSUT"). (*Id.* ¶ 13). Both BTF and NYSUT (collectively "Defendant Unions") are "employee organizations" within the meaning of the Taylor Law. (*Id.* ¶¶ 12–13); N.Y. Civ. Serv. Law § 201.5. The District and BTF are parties to collective bargaining agreement ("CBA") "that governs the terms and conditions of Plaintiff's employment and recognizes BTF as Plaintiff's exclusive representative pursuant to the CBA and the Taylor Law." (Dkt. No. 1, ¶ 14). Further, the District "issues wages to its employees, including Plaintiff, and processes payroll deductions of union dues for Defendant Unions from Plaintiff's wages pursuant to the requirements of the Taylor Law and the CBA." (*Id.* ¶¶ 14, 19).

### C.     Background

Plaintiff began her employment with the District in 2014. (Dkt. No. 1, ¶ 22). "[N]o one informed her that she had a right not to join Defendant Unions." (*Id.* ¶ 23). Plaintiff "was given a membership card and dues deduction authorization and was required to sign it as a condition of her employment." (*Id.* ¶ 24). Following Plaintiff's execution of the membership card, "the

District automatically took deductions from Plaintiff's wages for the benefit of Defendant

Unions." (*Id.*).

On March 19, 2018, "at the request of Defendant Unions, Plaintiff signed another

membership agreement and dues deduction authorization [form]." (*Id.* ¶ 25; Dkt. No. 1-2). The

form provides, in relevant part:

> YES, I request and accept membership in the Buffalo Teachers
> Federation, the New York State United Teachers (NYSUT) and its
> national affiliates . . . where applicable.
>
> I recognize the need for a strong union and believe everyone
> represented by a union should pay their fair share to support the
> union's activities. I hereby request and voluntarily authorize my
> employer to deduct an amount equal to the regular monthly dues
> uniformly applicable to members of the Buffalo Teachers
> Federation and remit that amount to the BTF. I understand that this
> authorization and assignment is not a condition of my employment
> and shall remain in effect, regardless of whether I am or remain a
> member of the union, for a period of one year from the date of this
> authorization and shall automatically renew from year to year unless
> I revoke this authorization by sending a written, signed notice of
> revocation . . . to the union between the window period of August
> 1–31 or another window period specified in a collective bargaining
> agreement.

(Dkt. No. 1-2). No additional window period was specified in the CBA. (*See* Dkt. No. 1-1; Dkt.

No. 19-1, at 7–126). Plaintiff asserts that "prior to March 19, 2018, [she] did not sign and did not

have any card describing or otherwise purporting to limit when she could revoke the deduction

of union dues/and or fees from her wages as a nonmember." (Dkt. No. 1, ¶ 26).

In 2021, "Plaintiff experienced a significant health issue," which prompted her to contact

"a BTF union-representative" and "ask[] for assistance in obtaining a work-from-home

exemption from the District." (*Id.* ¶ 27). However, the representative "responded by throwing up

her hands and asking Plaintiff 'What do you want me to do?'" (*Id.*). As a result, on October 24,

2021, "Plaintiff resigned from Defendant Unions and revoked her dues deduction authorization."

(*Id.* ¶ 28). On November 1, 2021, Philip Rumore, the president of BTF sent Plaintiff a letter acknowledging "receipt of Plaintiff's 'letter requesting to withdraw [her] membership'" from BTF. (*Id.* ¶ 29). Rumore advised Plaintiff that she was "permitted to drop [her] membership at any time" but that because "she had 'signed a membership card with maintenance of dues language,'" she had a "contractual obligation to pay an amount equal to the balance of union dues until the next window period (August 1, 2022)."[2] (*Id.*). Rumore attached a "Voluntary Union Membership Withdrawal" form to his letter. (*Id.* ¶ 30). The withdrawal form required Plaintiff to attest that she (1) "understand[s] that [she has] elected to forfeit the [union] benefits," and (2) understands that her "decision to withdraw from BTF may result in reduced bargaining strength which may, in turn, be detrimental to future collective bargaining wages, hours, working conditions, and benefits bargained by the BTF for all employees." (*Id.*).

At the time Plaintiff filed the Complaint in this case, April 29, 2022, Plaintiff was "not receiving union member benefits . . . even though union dues and/or fees . . . continue[d] to be deducted from her wages for Defendant Unions." (Dkt. No. 1, ¶ 32). However, "Defendants never provided Plaintiff with written notice of her constitutional right as a nonmember to choose not to pay any union dues or fees to Defendant Unions." (*Id.* ¶ 35). Nor did Defendants provide Plaintiff with "notice and an opportunity to object to how any nonconsensual union dues or fees deducted from her wages are spent." (*Id.* ¶ 36). Plaintiff alleges "[u]pon information and belief, Defendant Unions use" the dues or fees deducted from her wages "while she was and is a nonmember for purposes of political speech and activity . . . to which Plaintiff objects." (*Id.* ¶ 44).

---

[2] Plaintiff alleges "[u]pon information and belief, BTF has allowed at least one other bargaining unit employee to revoke his or her dues deduction authorization outside of Defendant Unions' alleged August window period." (Dkt. No. 1, ¶ 31).

The parties have informed the Court that Defendants ceased deducting union dues from Plaintiff's wages on July 1, 2022. (Dkt. No. 19-2, ¶ 18; Dkt. No. 25, at 8).

## III.    MATERIALS OUTSIDE THE COMPLAINT

Defendants have submitted two declarations, (Dkt. No. 19-2, at 2–5 (declaration by Philip Rumore, president of BTF); Dkt. No. 20-1 (declaration by Christopher R. Poole, counsel to the District)), and several exhibits in support of their motions, including the CBA, (Dkt. No. 19-2, at 7–126), the March 19, 2018 dues deduction authorization signed by Plaintiff, (Dkt. No. 19-2, at 128), and the October 24, 2021 letter from Plaintiff to BTF, (Dkt. No. 19-2, at 130–31). To the extent these submissions are relevant to the Rule 12(b)(1) portion of Defendants' motions, the Court may consider them. *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (N.D.N.Y. May 26, 2021) (explaining that in deciding Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court may "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record, including state court filings") (citations omitted). However, to the extent Defendants offer these submissions in support of their Rule 12(b)(6) motion, the Court must determine which exhibits, if any, it may consider in deciding Defendants' motions to dismiss for failure to state a claim.

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* (citations omitted). A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by

reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). Even where a document is deemed "'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* at 231 (quoting *DiFolco*, 622 F.3d at 111). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.* (quoting *Faulkner*, 463 F.3d at 134). "This principle is driven by a concern that a plaintiff may lack notice that the material will be considered to resolve factual matters." *Id.* (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). Thus, "if material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

The Court concludes that it may consider the CBA. (Dkt. No. 19-2, at 7–126). The Complaint not only relies heavily on its terms and effects of the CBA, (Dkt. No. 1, ¶¶ 15–18), but attaches a portion of the CBA as an exhibit, (Dkt. No. 1-1). Moreover, there is no dispute as to the authenticity or completeness of the CBA, which Defendants submitted in its entirety. (Dkt. No. 19-2, at 7–126). Thus, the CBA is properly before the Court. *Nicosia*, 834 F.3d at 230–31. Further, as Plaintiff already attached the March 19, 2018 dues deduction authorization to her Complaint, (Dkt. No. 1-2), Defendant's exhibit containing the same document, (Dkt. No. 19-2, at 128), is properly before the Court. However, the declarations are wholly outside the Complaint and while the Complaint references Plaintiff's October 24, 2021 resignation, (*see*, *e.g.*, Dkt. No. 1, ¶ 28 ("On October 24, 2021, Plaintiff resigned from Defendant Unions and revoked her dues

deduction authorization.")), it only indirectly references an October 24, 2021 letter, (*see id.* ¶ 29 (Rumore acknowledging "receipt of Plaintiff's 'letter requesting to withdraw [her] membership'")), and does not rely on the terms or effects of the letter. Accordingly, the Court does not consider the declarations or the October 24, 2021 letter in connection with Defendants' Rule 12(b)(6) motion.

## IV.    STANDARD OF REVIEW

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018, at *8 (N.D.N.Y. Oct. 29, 2021) (citation omitted). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). The Court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record, including state court filings." *Krajisnik Soccer Club*, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (citations omitted).

To survive a motion to dismiss for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014).

However, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## V.   DISCUSSION[3]

### A.   Mootness

Defendants argue that Plaintiff's requests for declaratory and injunctive relief should be

dismissed as moot.[4] (Dkt. No. 19-1, at 13). Specifically, Defendants argue that Plaintiff's

"claims for prospective relief do not present a live controversy" because "Plaintiff's financial

obligations ended with her July 1, 2022 paycheck." (*Id.* at 14). Plaintiff concedes that because

Defendants are no longer deducting dues or fees from her wages, her request for an injunction

prohibiting Defendants from deducting dues or fees from her wages is moot. (Dkt. No. 25, at 10

(acknowledging "Compl. at Prayer for Relief ¶¶ B.i–ii" is "effectively mooted"); Dkt. No. 1, at

14–15). However, Plaintiff argues that her remaining forms of declaratory and injunctive relief

present live controversies. (Dkt. No. 25, at 10).[5]

---

[3] Defendant Unions and Defendant District submitted separate motions to dismiss. (Dkt. Nos. 19-1; 20). However, Defendant District's motion to dismiss "adopts and incorporates" Defendant Unions' motion to dismiss. (Dkt. No. 20-2, at 4). Thus, the Court will use "Defendants' motions to dismiss" to refer to all the parties' objections to Plaintiff's complaint.

[4] Defendants' motions to dismiss conflates "standing" and "mootness." (Dkt. No. 19-1, at 13–14). As explained below, the doctrines are temporally distinct—standing addresses whether a plaintiff had a personal interest at the outset of litigation, while mootness addresses whether a personal interest continues to exist throughout the proceedings. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). Defendants do not dispute that, at the outset of the litigation, Plaintiff had a personal interest because they were deducting monies from Plaintiff's paycheck. (Dkt. No. 19-1, at 14). Instead, they dispute that her personal interest in declaratory and injunctive relief still exists because they ceased deducting monies from her paycheck in July 2022. (*Id.*). Thus, the Court will address the issue of whether Plaintiff's sought relief is moot.

[5] Plaintiff still seeks the following declaratory and injunctive relief:

A.   Declaratory: A judgment based upon the actual, current, and *bona fide* controversy between the parties as to the legal relations among them, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, declaring:

    i.    that Defendants' actions in forcing Plaintiff, as a nonmember, to provide past and ongoing financial support to Defendant Unions, and Sections 201 and 208 of the Taylor Law, to the extent they relate to, authorize, and/or require Defendants to do so, on their face and/or as applied, violated and violates the First and Fourteenth Amendments of the United States Constitution;

    ii.    that any taking and/or retention of union dues or fees from Plaintiff after her resignation of membership in Defendant Unions and without proper constitutional notice and waiver violates her rights under the First and Fourteenth Amendments of the United States Constitution; and that any

"Under Article III of the U.S. Constitution, '[t]he judicial Power of the United States' extends only to certain 'Cases' and 'Controversies.'" *Lacewell v. Office of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (citing U.S. Const. art. III, §§ 1–2). To establish Article III standing, "a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized[] and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). Further, "a request for nominal damages satisfies the redressability element of standing" if the plaintiff "establish[es] the other elements of standing." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021).

However, where a party "los[es] a stake in ongoing litigation," the question is not "whether the party losing its stake in the litigation has lost its *standing* but . . . whether the action has become *moot*." *Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 220–21 (2d Cir. 2018) (emphases in original). To avoid an action becoming moot, "the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be

---

provisions in the Taylor Law, the CBA, or any other purported authorizations that allow or require such deductions of union dues or fees are unconstitutional;

   iii.   or, alternatively, that the First and Fourteenth Amendments require Defendant Unions to provide Plaintiff with constitutionally adequate notice and a meaningful opportunity to object to the nonconsensual monies being seized from her wages and the purposes for which the monies are used, including the notice and procedures required by *Hudson*.

B.  Injunctive: A permanent injunction requiring Defendants, their officers, employees, agents, attorneys, and all others acting in concert with them:

      . . .

   iii.   . . . to provide constitutionally adequate notice and procedures regarding the District's payroll deductions of forced financial support for Defendant Unions from Plaintiff's wages.

(Dkt. No. 1, at 14–15).

redressed by a favorable judicial decision.'" *Bank v. Caribbean Cruise Line, Inc.*, 606 F. App'x 28, 29 (2d Cir. 2015) (summary order) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). Although "[t]he burden of establishing standing falls on the plaintiff," the "burden of showing mootness . . . falls on a defendant." *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 191–92 (2000)).

Where a plaintiff seeks injunctive or declaratory relief, she "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that . . . she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983)). Further, in determining whether a plaintiff's request for declaratory relief is moot, courts consider if "the facts alleged . . . show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (emphasis omitted) (quoting *Md. Cas. Co. v. Pac. Co.*, 312 U.S. 270, 273 (1941)); *see also Powers v. Long Island Power Auth.*, No. 21-cv-1755, 2022 WL 3147780, at *3, 2022 U.S. Dist. LEXIS 21840, at *9 (2d Cir. 2022) (summary order) (finding plaintiffs' requests for declaratory relief moot because there was no "practical consequence from the requested declarations" (citation omitted)).

Plaintiff's remaining request for injunctive relief asks the Court to "provide constitutionally adequate notice and procedures regarding the District's payroll deductions of forced financial support for Defendant Unions from Plaintiff's wages." (Dkt. No. 1, at 15). Defendants argue that this, like all her requests for prospective relief, is moot because "Plaintiff will not have any future monies deducted." (Dkt. No. 19-1, at 14). In response, Plaintiff argues

that this relief "is forward looking" because "Plaintiff was then and is now entitled to . . . an

accounting of how Defendant Unions spent Plaintiff's money." (Dkt. No. 25, at 12 (citing *Chi.*

*Tchrs. Union, Loc. No. 1 v. Hudson*, 475 U.S. 292, 307 & n.20 (1986))). In *Hudson*, the Supreme

Court found that nonmember plaintiffs were, at a minimum, entitled to "an adequate explanation

of the basis for [a] fee, a reasonably prompt opportunity to challenge the amount of the fee

before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while

such challenges are pending." 475 U.S. at 310. But both parties agree that Defendants have

ceased deducting dues from Plaintiff's paychecks, and neither party alleges that the deductions

may occur again. (Dkt. No. 19-1, at 12; Dkt. No. 25, at 8). As such, even if Plaintiff was entitled

to an accounting under *Hudson* while the deductions were occurring, she now points to a "past

injury to satisfy the injury requirement [without] show[ing] a likelihood that . . . she will be

injured in the future." *Deshawn E.*, 156 F.3d at 344 (citing *City of Los Angeles v. Lyons*, 461

U.S. 95 (1983)). Such an injury is insufficient to satisfy Article III of the U.S. Constitution. *See*

*Wheatley v. N.Y.S. United Tchrs.*, No. 21-cv-1006, 2022 WL 4452921, at *4, 2022 U.S. Dist.

LEXIS 178095, at *13 (N.D.N.Y. Sept. 19, 2022) (finding injunctive relief based on *Hudson*

moot after the defendant "stopped deducting [union] dues from [the plaintiff's] wages").

Moreover, Plaintiff seeks three forms of declaratory relief, *supra* note 3, which

Defendants claim are moot. (Dkt. No. 19-1, at 13–15). In particular, Plaintiff seeks declaratory

relief that the Taylor Law violates the First and Fourteenth Amendment to the extent that it

"forc[es] Plaintiff, as a nonmember, to provide past and ongoing financial support to Defendant

Unions" and "allow[s] or require[s] [] deductions of union dues or fees." (Dkt. No. 1, at 13–14);

N.Y. Civ. Serv. Law § 208.1. The Taylor Law provides, in relevant part, that membership dues

deduction agreements may remain in effect until "an individual employee revokes membership

in the employee organization in writing *in accordance with the terms of the signed authorization.*" N.Y. Civ. Serv. Law § 208.1. In response, Plaintiff relies on *Uzuegbunam* for the proposition that "declaratory relief can redress a past injury." (Dkt. No. 25, at 10–11 (citing 141 S. Ct. at 798 (emphasis omitted))). However, *Uzuegbunam* considered "whether a plaintiff who sues over a completed injury and establishes the first two elements of standing (injury and traceability) can establish the third by requesting only nominal damages." 141 S. Ct. at 797 (citation omitted). And courts consider declaratory relief and nominal damages separately. *Clementine Co. LLC v. Adams*, No. 21-cv-7779, 2022 WL 4096162, at *2–3, 2022 U.S. Dist. LEXIS 161603, at *6–7 (S.D.N.Y. Sept. 7, 2022) (finding multiple plaintiffs' "claims for declaratory and injunctive relief . . . moot" before considering whether their "claim for nominal damages" saved the action). Thus, *Uzuegbunam* does not save Plaintiff's declaratory forms of relief if she fails to "show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser*, 422 U.S. at 402 (emphasis omitted) (quoting *Md. Cas. Co. v. Pac. Co.*, 312 U.S. at 273).

As other courts in this Circuit have found, a judgment declaring, inter alia, that Defendants' actions, "in forcing Plaintiff" to pay dues and fees "without proper constitutional notice and waiver," violate the First and Fourteenth Amendment would provide no meaningful relief where, as here, Defendants are no longer deducting dues or fees from Plaintiff's wages. (Dkt. No. 1, at 13–14); *see Wheatley*, 2022 WL 4452921, at *4, 2022 U.S. Dist. LEXIS 178095, at *13 (finding the same declaratory forms of relief moot where the defendant "stopped deducting . . . dues from [the plaintiff's] wages"); *Berman v. New York State Pub. Emp. Fed'n*, No. 16-cv-204, 2019 WL 1472582, at *3–4, 2019 U.S. Dist. LEXIS 57312, at *8–9 (E.D.N.Y. Mar. 31, 2019) (finding a union nonmember's case moot "insofar as [he] asserts claims for

prospective relief" where the defendants ceased "withdrawing agency fees from nonmember[s]"). As explained above, Defendant Unions ceased deducting dues from Plaintiff's paycheck on July 1, 2022. (Dkt. No. 19-1, at 12; Dkt. No. 25, at 8). Thus, Plaintiff does not present an immediate, real, and substantial controversy that is redressable through declaratory relief. Neither declaring Defendants' actions or the Taylor Law unconstitutional nor providing Plaintiff notice and an opportunity to object to the deductions would provide Plaintiff with any relief, let alone "effectual relief." *See Uzuegbunam*, 141 S. Ct. at 796.

Plaintiff also seeks "nominal and compensatory damages" as well as attorneys' fees and costs. (Dkt. No. 1, at 15). Neither party disputes that Defendants deducted dues from Plaintiff's paychecks for approximately eight months following Plaintiff's October 24, 2021, resignation from the union. (Dkt. No. 1, ¶ 28; Dkt. No. 19-1, at 12; Dkt. No. 25, at 8). Thus, Plaintiff has established an economic injury traceable to the Defendants and has standing to seek these forms of relief. *See Spokeo, Inc.*, 136 S. Ct. at 1547; *Uzuegbunam*, 141 S. Ct. at 802 ("We hold only that, for the purpose of Article III standing, nominal damages provide the necessary redress for a completed violation of a legal right."). Accordingly, Defendants' motion to dismiss Plaintiff's claims seeking declaratory and injunctive relief is granted. Fed. R. Civ. P. 12(b)(1). However, Plaintiff's claims for monetary damages may proceed.

### B.  Motions to Dismiss for Failure to State a Claim

Defendants move to dismiss the Complaint under Rule 12(b)(6) on the ground that Plaintiff has failed to adequately state a claim for relief. (Dkt. No. 19-1, at 15, 23). In the Complaint, Plaintiff asserts two claims under 42 U.S.C. § 1983: a violation of her First Amendment right to association and a violation of her Fourteenth Amendment right to due process. (Dkt. No. 1, ¶¶ 48–49, 65–69).

"[T]o maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted). For the reasons below, Defendants' motion to dismiss Plaintiff's remaining claims is granted.

### 1.      Acting Under Color of State Law

Plaintiff devotes a substantial portion of her response brief to addressing the argument, which Defendant Unions initially raised in a footnote: that Defendant Unions are private entities and thus not state actors for purposes of a § 1983 claim. (Dkt. 25, at 22–26; Dkt. No. 19-1, at 25 n.6). While the Court normally would not consider an argument mentioned in a footnote to be adequately raised, *see United States v. Svoboda*, 347 F.3d 471, 480 (2d Cir. 2003) ("It is well-established in this Circuit that [w]e do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review." (internal quotation marks and citation omitted)), because Plaintiff has addressed it and Defendant Unions have replied fully, (Dkt. No. 26, at 10–11), the issue is properly before the Court.

It is well-settled that a plaintiff alleging a violation of her constitutional rights under Section 1983 must show state action. *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012); *see also* 42 U.S.C. § 1983 (imposing liability on persons who act "under color of any [state] statute, ordinance, regulation, custom, or usage"). While private parties generally are not state actors, their conduct can be attributed to the state for Section 1983 purposes when: "(1) 'the entity acts pursuant to the coercive power of the state or is controlled by the state'" (the "compulsion test"); "(2) 'the state provides significant encouragement to the entity,' and 'the entity is [either] a willful participant in joint activity with the state or the entity's functions are entwined with state

policies'" (the "joint action test" or "close nexus" test); "or (3) 'the entity has been delegated a public function by the state.'" *Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 147 (2d Cir. 2020) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). The "fundamental question" for each test is whether the private party's conduct is "fairly attributable" to the state such that it bears responsibility. *Fabrikant*, 691 F.3d at 207 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 847 (1982)).

As an initial matter, Defendant Unions are private entities, and Plaintiff does not argue otherwise. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("Labor unions . . . generally are not state actors." (citation omitted)); *Peralta v. 32BJ SEIU*, No. 21-cv-1638, 2022 WL 792164, at *1, 2022 U.S. App. LEXIS 6742, at *2 (2d Cir. Mar. 16, 2022) (summary order) (affirming dismissal on grounds that the defendant union was a "private entity," the plaintiff "did not allege any facts suggesting that [the private union] should be treated as a state actor"). Rather, Plaintiff alleges that Defendant Unions acted under color of state law by acting jointly with Defendant District, a state actor, in depriving Plaintiff of her constitutional rights. [6] (Dkt. No. 1, ¶¶ 39–43, 52).

To act under color of state law, "it is enough that the private party is a willful participant in joint action with the State or its agents." *Forbes v. City of New York*, No. 05-cv-7331, 2008 WL 3539936, at *5, 2008 U.S. Dist. LEXIS 63021, at *12 (S.D.N.Y. Aug. 12, 2008) (brackets omitted) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). The "touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy'" shared by the private actor and the State. *Id.*, 2008 WL 3539936, at *5, 2008 U.S. Dist. LEXIS 63021, at *13 (quoting *Ginsberg v.*

---

[6] Defendants do not dispute that Defendant District, as a public school district, is a state actor. (Dkt. No. 26, at 9); *see Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 178 (E.D.N.Y. Sept. 13, 2010) (finding a school district a state actor, noting that the district did not "dispute that they are state actors for purposes of [a] § 1983 claim").

*Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)). However, "[i]t is not enough . . . for a plaintiff to plead state involvement in '*some activity* of the institution alleged to have inflicted injury upon a plaintiff'; rather, the plaintiff must allege that the state was involved 'with the *activity that caused the injury*' giving rise to the action." *Sybalski*, 546 F.3d at 257–58 (emphases in original) (quoting *Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 428 (2d Cir. 1977)).

Plaintiff claims that Defendant Unions and Defendant District acted jointly and pursuant to the CBA in depriving Plaintiff of her constitutional rights. (Dkt. No. 1, ¶¶ 39, 52). However, Plaintiff has not plausibly alleged facts that indicate the state was involved with the activity that caused her injury. *See Sybalski*, 561 F.2d at 428. Here, according to the Complaint, the activity that caused Plaintiff's injury was Defendants' "refus[al] to end union dues deductions from Plaintiff's wages even after her resignation." (Dkt. No. 1, ¶ 39). The CBA states that Defendant District will "establish payroll deductions for [Defendant Unions]." (Dkt. No. 1-1, at 10). However, the authorization to deduct union dues from an employee's paycheck comes from a "payroll deduction authorization form," not the CBA itself. (*Id.*). Thus, Plaintiff signing the authorization form—an independent agreement between Defendant Unions and Plaintiff—is the activity that caused Plaintiff's alleged injury. *See Sybalski*, 546 F.3d at 257–58. Accordingly, the CBA is insufficient to establish that Defendant Unions are state actors within Section 1983. *See Semerjyan v. SEIU Local 2015*, 489 F. Supp. 3d 1048, 1058 (C.D. Cal. 2020) (finding that "state officials' ministerial role in deducting dues from the wages of reported union member did not constitute the sort of significant assistance . . . required to meet the joint action test" (citations and quotation marks omitted)); *Todd v. Am. Fed'n of State, Cnty., and Mun. Emps., Council 5*, 571 F. Supp. 3d 1019, 1030 (D. Minn. 2021) (finding no joint action between a union and a state where the state served "in a ministerial payroll processing role").

Plaintiff's arguments that the Taylor Law and the dues deduction authorization form demonstrate joint action also fail. First, Plaintiff claims that New York law "authorize[d] Defendants to violate Plaintiff's constitutional rights by deducting union dues or fees from her wages without her consent." (Dkt. No. 1, at ¶¶ 19, 53); N.Y. Civ. Serv. Law § 208. The Taylor Law provides, in relevant part, that "[a] public employer shall extend to an employee organization" the right "to membership dues deduction, upon presentation of dues deduction authorization cards signed by individual employees" which may remain in effect until "an individual employee revokes membership in the employee organization in writing *in accordance with the terms of the signed authorization*." N.Y. Civ. Serv. Law § 208.1 (emphasis added). "Although Defendant District was required to enforce the Membership Agreement under the Taylor Law, it had no say in shaping the terms of that [a]greement," and is not specifically named in the agreement; thus there is no basis for inferring joint action. *Wheatley*, 2022 WL 4452921, at *8, 2022 U.S. Dist. LEXIS 178095, at *23–24; *see Peralta*, 2022 WL 792164, at *1, 2022 U.S. App. LEXIS 6742, at *2; *see also Sybalski*, 546 F.3d at 258–59 (finding no state action by private group home under joint action test even though New York had established "substantive rights for patients in mental health facilities and procedures for protecting these rights" (citation omitted)); *Grogan v. Blooming Grove Volunteer Ambulance Corp.*, 917 F. Supp. 2d 283, 288 (S.D.N.Y. 2013) (finding allegations that "the state controls the licensing" and that there were state "regulations that permit [the defendant] to operate," and "[that a state agency] oversees the defendant's conduct" were insufficient to allege "joint action" or that the defendant's conduct was "'fairly attributable to the state'" (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982))), *aff'd*, 768 F.3d 259 (2d Cir. 2014); *Belgau v. Inslee*, 975 F.3d 940, 947 (9th Cir. 2020) (finding that a private union and Washington state employees "enter[ing]

into bargained-for agreements without any direction, participation, or oversight by Washington

[state]" was insufficient to establish state action (citations omitted)).

Thus, Plaintiff has not plausibly alleged that Defendant Unions were either acting under

the color of state law or in concert with Defendant District. Accordingly, Defendant Unions'

motion to dismiss is granted.[7]

### 2.    Deprivation of a Constitutional Right[8]

Defendants argue that because Plaintiff voluntarily executed a dues deduction

authorization agreeing to pay union dues, Plaintiff fails to allege a plausible claim for relief

under the First or Fourteenth Amendments. (Dkt. No. 19-1, at 15–25). Relying on *Janus*, 138

S. Ct. 2448, Plaintiff argues that Defendants' continued deduction of dues from Plaintiff's wages

after she resigned union membership without first obtaining a waiver of constitutional rights,

violated the First and Fourteenth Amendments. (Dkt. No. 25, at 12–22).

### a.    First Amendment Claim

In *Janus*, the Supreme Court considered an Illinois law, which provided that if public-

sector collective bargaining agreements contained a provision requiring nonmember employees

to pay an "agency fee," which is a percentage of full union dues, that amount could be

"automatically deducted from the nonmember's wages"—no employee consent was required.

138 S. Ct. at 2486. The Supreme Court found that the procedure of "automatically deduct[ing]"

---

[7] In a footnote in Defendant Unions' Reply, they argue that Defendant District "could not be held liable under Section 1983 because the District was following [the Taylor Law]." (Dkt. No. 26, at 10 n.1). Because the argument is in a footnote and Plaintiff did not have an opportunity to respond, the argument was not preserved for the Court's review. *See Svoboda*, 347 F.3d at 480 ("It is well-established in this Circuit that [w]e do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review." (internal quotation marks omitted)). Because Defendant District does not present any additional arguments that they are not a state actor for Section 1983 purposes, the Court will consider whether Defendant District deprived Plaintiff of a constitutional right.

[8] As described below, even if Plaintiff adequately alleged state action by Defendant Unions, her claims would nonetheless fail on the merits.

agency fees from union nonmembers, who were "not asked" about the fees and were "not required to consent," violated the First Amendment because it compelled nonmembers "to subsidize" private speech by unions. *Id.* at 2460–61. The Supreme Court held that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." *Id.* at 2486. Further, *Janus* found that a waiver of nonmembers' First Amendment rights "cannot be presumed," and must be "shown by 'clear and compelling' evidence.'" 138 S. Ct. at 2486 (citations omitted). Although "*Janus* repudiated agency fees imposed on nonmembers," it did not repudiate "union dues collected from members, and left intact 'labor-relations systems exactly as they are.'" *Belgau*, 975 F.3d at 944 (quoting 138 S. Ct. at 2485 n.27).

Here, unlike the plaintiff in *Janus*, who was a never a union member and whose consent the public-sector union and employer were "not required to" obtain and, did not obtain, "before the fees [were] deducted," 138 S. Ct. at 2461, Plaintiff was a union member for over six years, (Dkt. No. 1, ¶¶ 11, 22, 28), voluntarily agreed to pay dues, and authorized the deduction of monthly union dues, (*id.* ¶ 28; Dkt. No. 1-2, at 2 ("I hereby request and voluntarily authorize my employer to deduct an amount equal to the regular monthly dues.")). Although Plaintiff resigned her membership in October 2021, she had previously authorized the continued deduction of dues "regardless of whether" she "remain[ed] a member of the union," (*id.* ¶ 28; Dkt. No. 1-2, at 2), until the next window period, August 1–31, when Plaintiff could revoke the dues deduction authorization, (Dkt. No. 1-2, at 2). In *Janus*, the Supreme Court observed that agency fees and other payments to the union may not "be deducted from a nonmember's wages . . . unless the employee *affirmatively consents to pay*." 138 S. Ct. at 2486 (emphasis added). "By agreeing to

20

pay," the Court explained, "nonmembers are waiving their First Amendment rights." *Id.*
(citations omitted). Plaintiff's signing of the dues deduction authorization therefore appears to
constitute an affirmative consent to pay and places this case outside the realm of *Janus*. *See*
*Belgau v. Inslee*, No. 18-cv-5620, 2018 WL 4931602, at *5, 2018 U.S. Dist. LEXIS 175543, at
*13 (W.D. Wash. Oct. 11, 2018) ("*Janus* says nothing about people [who] join a Union, agree to
pay dues, and then later change their mind about paying dues."); *Marsh v. AFSCME Local 3299*,
No. 19-cv-02382, 2021 WL 164443, at *6, 2021 U.S. Dist. LEXIS 9695, at *16 (E.D. Cal. Jan.
19, 2021) (explaining that "*Janus* discussed the rights of public employees who *never* signed
union membership agreements, unlike [this] plaintiff[] who did, by their own admission[] . . .
sign [a] membership card[]" (emphasis in original)).

As every court to consider this issue has found, once Plaintiff "consented to pay dues to
the union, regardless of the status of her membership, [Plaintiff] [did] not fall within the sweep
of *Janus*'s waiver requirement." *Bennett v. Am. Fed'n of State, Cnty. and Mun. Emps.*, 991 F.3d
724, 733 (7th Cir. 2021) (citing *Belgau*, 975 F.3d at 952). To the extent Plaintiff argues that even
if she agreed to pay, because the authorization contained no express waiver of her constitutional
rights, (Dkt. No. 25, at 13), it could not constitute a waiver of her First Amendment rights, the
Court disagrees. Courts have found rejected Plaintiff's argument, finding it "much too myopic."
*Troesch v. Chicago Tchrs. Union, Loc. Union No. 1, Am. Fed'n of Tchrs.*, 522 F. Supp. 3d 425,
432 (N.D. Ill.), *aff'd*, No. 21-1525, 2021 WL 2587783 (7th Cir. Apr. 15, 2021); *see id.* ("As
*Janus* makes clear, Plaintiffs 'waiv[ed] their First Amendment rights' simply '[b]y agreeing to
pay.'" (quoting *Janus*, 138 S. Ct. at 2486)); *see also Bennett*, 991 F.3d at 731 (joining the Third
and Ninth Circuits in rejecting "the argument that *Janus* requires a constitutional waiver before
union dues are deducted" (citing *Fischer*, 842 F. App'x at 753; *Belgau*, 975 F.3d at 952)).

Plaintiff advances several additional arguments in support of her First Amendment claim. First, Plaintiff argues that the dues deduction authorization was not a voluntarily waiver of her First Amendment rights because she "could not have knowingly waived her constitutional rights since she signed her membership card before *Janus* was decided." (Dkt. No. 25, at 13). Plaintiff cites no caselaw that would support this argument. Moreover, while the Second Circuit has not yet addressed this issue, a "'swelling chorus of courts' has recognized that '*Janus* does not extend a First Amendment right to avoid paying union dues' when those dues arise out of a contractual commitment that was signed before *Janus* was decided." *Fischer v. Governor of New Jersey*, 842 F. App'x 741, 753 (3d Cir. 2021) (quoting *Belgau*, 975 F.3d at 944–45)); *see also Belgau*, 975 F.3d at 952 (finding that *Janus* "in no way created a new First Amendment waiver requirement for former union members before dues are deducted pursuant to a voluntary agreement"); *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 962 (10th Cir. 2021) (finding "*Janus*'s affirmative consent analysis provides no basis for" recovery because the plaintiff, "[u]nlike non-union members, who had not signed any agreement to pay agency fees," had "affirmatively consented to pay dues").

Second, Plaintiff argues that notwithstanding her dues deduction authorization, once she resigned from her union membership in October 2021, Defendants were required to obtain "a constitutional rights waiver" before they could continue deducting dues and that Defendants' failure to do so violated the principles articulated in *Janus* and her First Amendment rights. (Dkt. No. 25, at 13). This argument is also without merit and Plaintiff cites no caselaw that would support it—indeed, such arguments appear to have been rejected. *See Belgau*, 975 F.3d at 950–51 (rejecting the plaintiff's argument that "*Janus* voided the commitment they made and now requires the state to insist on strict constitutional waivers with respect to deduction of union

dues"); *see also Troesch*, 522 F. Supp. 3d at 430 ("[C]ourts have universally recognized that *Janus* does not articulate a path to escape the terms of an agreement to pay union dues, which remain binding under *Cohen* [*v. Cowles Media Co.*, 501 U.S. 663 (1991)] even where an employee has resigned her membership in [the union]." (internal quotation marks omitted) (collecting cases)), *aff'd*, No. 21-1525, 2021 WL 2587783 (7th Cir. Apr. 15, 2021); *see*, *e.g.*, *Fischer*, 842 F. App'x at 753 (finding that *Janus* did "not give Plaintiffs the right to terminate their commitments to pay union dues" and to continue paying dues until a specific date following notice of resignation, "unless and until those commitments expire under the plain terms of their membership agreements"); *Bennett*, 991 F.3d at 730, 733 (rejecting the plaintiff's claim that "the *Janus* decision voided her dues-deduction authorization," explaining that "[h]aving consented to pay dues to the union, regardless of the status of her membership, [the plaintiff] does not fall within the sweep of *Janus's* waiver requirement" (citation omitted)). Indeed, the Supreme Court has expressly recognized that "[t]he First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law." *Cohen*, 501 U.S. at 671; *see also* 11 Williston on Contracts § 30:23 (4th ed. 2020) ("[C]hanges in the law subsequent to the execution of a contract are not deemed to become part of [an] agreement unless its language clearly indicates such to have been [the] intention of [the] parties."). Thus, Plaintiff's argument that Defendants' failure to obtain a constitutional waiver once she resigned her union membership before they could continue to deduct dues fails to state a plausible claim for relief under the First Amendment.

Plaintiff next argues that even assuming *Janus* does not render her dues deduction authorization invalid, because it is unenforceable under state law, her consent to pay union dues

was involuntary, [9] and it would, therefore, be "wholly premature for this Court to dismiss Plaintiff's claims."[10] (Dkt. No. 25, at 15–19). Specifically, Plaintiff claims that the dues deduction authorization is an unenforceable contract "for at least four reasons": (1) lack of valuable consideration; (2) waiver; (3) lack of plain terms; and (4) material breach. (Dkt. No. 25, at 15–19). Plaintiff, however, fails to plead facts that would allow a plausible inference that her agreement to the dues deduction was unenforceable.

As to consideration, Plaintiff argues that because she "*already had* the benefit of union membership when she allegedly signed the" dues deduction authorization, "Defendants' claimed consideration of union membership was long past and does not count." (Dkt. No. 25, at 16). Defendants reply that "the future rights and benefits of membership provide the consideration for the agreement to the new terms." (Dkt. No. 26, at 7).

With one exception, discussed below, under New York law, past consideration cannot support an agreement. *Lebedev v. Blavatnik*, 193 A.D.3d 175, 183 (N.Y. App. Div. 2021)

---

[9] Although Plaintiff alleges that "when [she] began her employment for the District," she was required to sign the dues deduction authorization "as a condition of her employment," this allegation is wholly conclusory. (Dkt. No. 1, ¶¶ 23–24). Further, Plaintiff claims that she signed two dues deduction authorizations: one in 2014 after beginning her employment, and one on March 19, 2018. (Dkt. No. 1, ¶¶ 22, 24–25). Unlike the initial dues deduction authorization, Plaintiff does not claim that her employment was conditioned on her signature on the March 19, 2018 authorization. (Dkt. No. 1, ¶ 25). And the dues deduction agreement signed on March 19, 2018, which Plaintiff attached to her complaint, expressly states that "this authorization and assignment is not a condition of [Plaintiff's] employment" and that the individual "voluntarily authorize[s] [their] employer to deduct . . . monthly dues." (Dkt. No. 1, ¶ 25; Dkt. No. 1-2, at 2). Thus, Plaintiff has not plausibly alleged facts that indicate she involuntarily signed the March 19, 2018 authorization.

[10] In general, post-*Janus* plaintiffs advancing enforceability arguments with respect to dues deduction authorizations—presumably in an effort to avoid *Cohen*, 501 U.S. at 671 ("The First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law")—have found little success. *See, e.g., Fultz v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 13*, 549 F. Supp. 3d 379, 388 (M.D. Pa. 2021) ("While Plaintiffs ground these arguments in contract law, they are meant to illustrate that Commonwealth Defendants are not entitled to dismissal of Plaintiffs' § 1983 claim because the contracts may be unenforceable and, consequently, may not insulate their allegedly unconstitutional dues deductions by sufficient waiver of First Amendment rights. But we see no factual allegations whatsoever that would support these contractually based arguments."). Indeed, "numerous jurisdictions have concluded that union membership agreements are enforceable contracts." *Fischer*, 842 F. App'x at 752 (3d Cir. 2021) (citing, inter alia, *Fisk v. Inslee*, 759 F. App'x 632 (9th Cir. 2019); *Shea v. McCarthy*, 953 F.2d 29, 30 (2d Cir. 1992)).

("[P]ast consideration is no consideration and cannot support an agreement because the detriment did not induce the promise." (citation omitted)). Rather, "[a] valuable consideration, in the sense of the law," generally "consist[s] either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other." *Hamer v. Sidway*, 124 N.Y. 538, 545 (N.Y. 1891) (internal quotation marks omitted). Here, the terms of the dues deduction authorization show consideration by both parties: Defendant Unions provide "membership in the Buffalo Teachers Federation, the New York State United Teachers (NYSUT) and its national affiliates," in exchange for Plaintiff's payment of her "fair share to support the union's activities," and "voluntary authoriz[ation]" of her employer's deduction of "an amount equal to the regular monthly dues." (Dkt. No. 1-2, at 2); *see, e.g.*, *Littler v. Ohio Ass'n of Pub. Sch. Emps.*, No. 20-3795, 2022 WL 898767, at \*5, 2022 U.S. App. LEXIS 8182, at \*14 (6th Cir. Mar. 28, 2022) ("[T]he consideration supporting contract formation here is the privilege of membership in and of itself.").

But even if, as Plaintiff contends, the dues deduction authorization was based on "past consideration," i.e., her membership, because the agreement was in writing and executed by Plaintiff, it is a valid contract under New York law, which contains an exception for past consideration so long as the agreement is in writing. *See* N.Y. Gen. Oblig. Law § 5–1105 ("A promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed."); *see also Lexington Owner LLC v. Kaplowitz*, 149 A.D.3d 590, 591 (N.Y. App. Div. 2017) ("[E]ven if Danovitch's guaranty was provided for 'past consideration' (i.e., to induce the landlord into

extending the Lease), it should not be denied legal effect as a valid contract, as it was in writing and executed by Danovitch." (citing N.Y. Gen. Oblig. Law § 5–1105)). Thus, Plaintiff's argument is without merit.

Plaintiff's arguments regarding waiver, lack of plain terms, and breach of contract are also unavailing. Plaintiff argues that Defendants waived the provision permitting deduction of dues prior to the August 1–31 window period by ceasing deductions in July 2021. (Dkt. No. 25, at 16–17). Plaintiff provides no caselaw or other legal argument that would support this argument. In addition, any claims post-July 2021 are moot.

Plaintiff next asserts Defendants unilaterally altered "the terms of the card by accepting and processing" her October 2021 resignation "outside of a window period," i.e., August 1–31, thereby waiving the right to continue collect union dues. (Dkt. No. 25, at 17). Plaintiff's Complaint, however, contains no allegations that that the dues deduction authorization prohibited Defendant Unions from processing her resignation. To the contrary, the dues deduction authorization expressly states that it would "remain in effect, regardless of whether" Plaintiff was "or remain[ed] a member of the union." (Dkt. No. 1-2, at 2).[11] Thus, Plaintiff's waiver argument lacks merit.

Plaintiff further argues that the dues deduction authorization lacks "plain terms" because it refers to "a window period of Aug. 1–31 *or* another window period specified in the collective bargaining agreement." (Dkt. No. 25, at 17–18). Specifically, Plaintiff asserts that this language is ambiguous and leaves "union members guessing about when they are supposed to provide notice," and that discovery is required to determine whether the "*or*" is "exclusive or not." (*Id.*

---

[11] To the extent Plaintiff's argument is a reference to Defendants' termination of deduction in July 2022, such matters concern facts outside those alleged in the Complaint.

(emphasis added)). Ambiguity does not exist when contract language has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (alteration in original) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (N.Y. 1978)). Conversely, a contract is ambiguous when it is "reasonably susceptible of more than one interpretation." *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 573 (N.Y. 1986). Here, the dues deduction authorization's language clearly and unambiguously provides that notice of revocation must be "written" and signed" and sent "via U.S. Mail to the union between the window period of August 1-31 or another window period specified in a collective bargaining agreement."[12] (Dkt. No. 1-2, at 2). Thus, Plaintiff's argument is without merit. *See Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (ambiguity does not exist "where one party's view 'strain[s] the contract language beyond its reasonable and ordinary meaning'" (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459 (N.Y. 1957))).

Finally, Plaintiff argues that "Defendant Unions withheld union benefits from Plaintiff after her resignation but before they stopped having her wages forcibly seized by the District," breaching the dues deduction authorization. (Dkt. No. 25, at 18). Plaintiff, however, alleges no facts whatsoever in the Complaint that would allow a plausible inference withholding membership benefits following her resignation from Defendant Unions would violate the authorization. As noted above, the dues deduction authorization expressly states that it would "remain in effect, regardless of whether" Plaintiff was "or remain[ed] a member of the union," (Dkt. No. 1-2, at 2), thus, Plaintiff's argument is without merit, *see Fultz v. Am. Fed'n of State,*

---

[12] There is no other "window period" specified in the CBA.

*Cnty. & Mun. Emps., Council 13*, 549 F. Supp. 3d 379, 389 (M.D. Pa. 2021) (rejecting as "nonsensical," the plaintiff's argument that by continuing to deduct dues following the plaintiffs' resignation without providing union benefits, the union materially breached the agreement, noting that the relevant "language, on its face, indicates that Plaintiffs may cut all ties to the Union and its membership, but will still be required to pay the authorized dues for a period of one year from the date of their execution of the Membership Cards").

Thus, Plaintiff has failed to plausibly allege that Defendants violated her First Amendment rights. Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment claim is granted.

   **b.**  **Fourteenth Amendment Claim**

Defendants move to dismiss Plaintiff's Fourteenth Amendment claim, arguing that Plaintiff has failed to establish such a violation because "she *voluntarily* joined BTF and NYSUT and agreed to pay the dues," which does not constitute a deprivation of due process. (Dkt. No. 19-1, at 24–25 (emphasis in original)). Plaintiff responds that she has adequately stated a due process claim because if the collective bargaining agreement provided an earlier window period than August 1–31, "it is possible under the terms of the membership card—and discovery may ultimately show—that union dues should have stopped being taken from Plaintiff's wages *before* they ultimately were." (Dkt. No. 25, at 19 (emphasis in original)). Plaintiff further argues that Defendants violated her Fourteenth Amendment right to due process by failing to "implement[] policies and procedures . . . to reduce the impingement on Plaintiff's constitutional rights, including the constitutionally required procedures and disclosures . . . recognized in *Hudson*" and failing to "provide[] Plaintiff with notice of or a meaningful opportunity to object to the past . . . seizure of a portion of her wages via payroll deductions by the District." (Dkt. No. 1, ¶¶ 67–68 (citation omitted)). Defendant argues that Plaintiff was not denied notice or an opportunity to

object to the payments because she "had the opportunity to avoid incurring the obligations . . . by simply choosing not to join BTF or NYSUT." (*Id.* at 18–19).

To establish a Fourteenth Amendment violation under § 1983, a plaintiff must show both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004). To establish a property interest, "a person clearly must have more than an abstract need or desire for it;" instead, she must "have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Similarly, "[a] liberty interest may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Vitek v. Jones*, 445 U.S. 480, 493–94 (1980); *Wolff v. McDonnell*, 418 U.S. 539, 556–58 (1974)).

Here, Plaintiff appears to assert her protected liberty or property interests concern "the seizure of a portion of her wages" and "her right not to subsidize the speech and activities of Defendant Unions." (Dkt. No. 1, ¶¶ 69, 70). Plaintiff first asserts that there "it is possible" and "discovery may ultimately show" that there was an earlier "window" during which Plaintiff was authorized to seek to revoke her dues deduction authorization. (Dkt. No. 25, at 19). Plaintiff alleges no facts whatsoever in support of this assertion. Although the dues deduction authorization refers to "another window period" there is no allegation in the Complaint that such another window period existed in the collective bargaining agreement or elsewhere. Accordingly, any inference that Plaintiff was deprived of an earlier revocation window would be purely speculative.

Further, as discussed above, Plaintiff has failed to allege that her consent to paying post-resignation dues in the dues deduction authorizations was anything but voluntary. (Dkt. No. 1, ¶¶

24, 25); *see Roth*, 408 U.S. at 577. Thus, she fails to allege a protected property interest. Moreover, to the extent Plaintiff relies on *Janus* to articulate a protected liberty interest under the Constitution, she fails to cite any legal authority that would support such a proposition. Courts considering similar arguments have found that *Janus* did not establish a protected liberty or property interest for union members. *Barlow v. Serv. Emps. Int'l Union, Local 668*, 566 F. Supp. 3d 287, 302 (M.D. Pa. 2021) (concluding that *Janus* "established only protected liberty or property interests for *non-union members*, not [former] *union members* like Plaintiff." (emphases in original)); *see also Marsh v. AFSCME Loc. 3299*, 2020 WL 4339880, at *10, 2020 U.S. Dist. LEXIS 133767, at *26 (E.D. Cal. July 28, 2020) (finding that *Janus* did not create a liberty interest "for employees who, post-*Janus*, come to regret their membership decision" (citation omitted)).

Further, Plaintiff has not plausibly alleged that she was deprived of notice or an opportunity to object to the seizure of her wages. (Dkt. No. 1, ¶¶ 67–68). No such deprivation has occurred because, as discussed above, even accepting as true all the factual allegations in the Complaint, Plaintiff voluntarily agreed to pay union dues during the relevant time period, whether or not she was a union member. *Wagner v. Univ. of Wash.*, No. 20-cv-00091, 2020 WL 5520947, at *5, 2020 U.S. Dist. LEXIS 166328, at *13 (W.D. Wash. Sept. 11, 2020) (explaining, on summary judgment, that the plaintiff "did not suffer the deprivation of a liberty or property interest as she voluntarily assented to Union membership and deduction of Union dues" (citing *Marsh*, 2020 WL 4339880, at *10, 2020 U.S. Dist. LEXIS 133767, at *10; *Molina v. Penn. Soc. Serv. Union*, No. 19-cv-00019, 2020 WL 2306650, at *10–11, 2020 U.S. Dist. LEXIS 81307, at *10 (M.D. Pa. May 8, 2020))). Plaintiff does not plausibly allege any facts that indicate she involuntarily signed the March 19, 2018 dues deduction authorization. (Dkt. No. 1, ¶ 25).

Because Plaintiff fails to allege such facts, she fails to plausibly allege that Defendant District, in adhering to the signed authorization's terms deprived Plaintiff of a protected liberty or property interest in violation of the Fourteenth Amendment.

Finally, even if Plaintiff established a protected liberty or property interest, she has not alleged facts showing that she was deprived of that interest. Plaintiff argues that she was entitled to the procedures afforded to the nonmember plaintiffs in *Hudson*, which were "an adequate explanation of the basis for [a] fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending." 475 U.S. at 310. However, in *Hudson*, the Supreme Court was "concerned [with] the First Amendment rights of nonunion employees, whose payment of agency-shop-related fees constitutes a 'limited infringement' on their rights." *Smith v. Serv. Emps. Int'l Union, Loc. 668*, 566 F. Supp. 3d 251, 268 (M.D. Pa. Oct. 12, 2021). Because Plaintiff has failed to allege any First Amendment violations and fails to allege that her agreement to pay union dues and to continue paying union dues until the August 1–31 revocation period, even as a nonmembers, *Hudson*'s procedures are inapplicable to Plaintiff. *See Barlow*, 566 F. Supp. 3d at 303 ("Because *Hudson* concerned the First Amendment rights of nonunion employees, whose payment of agency-shop-related fees constituted a 'limited infringement' on their rights, its holding is inapplicable to the circumstances presented here given Plaintiff's failure to allege any First Amendment violations in the first instance.").

Accordingly, Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claim under is granted.

## VI.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction (Dkt. Nos. 19, 20) are **GRANTED** in part and Plaintiff's claims for declaratory and injunctive relief are **DISMISSED without prejudice**; and it is further

**ORDERED** that Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim (Dkt. Nos. 19, 20) are **GRANTED**; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk is directed to close this case.

**IT IS SO ORDERED.**

Dated: <u>November 22, 2022</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge